# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NDOKEY ENOW, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-17-341 |
| JOHN WOLFE, Warden, *et al.*, | * | |
| Defendants. | * | |

# **MEMORANDUM OPINION**

Ndokey Enow, a Maryland inmate, has filed over a dozen burdensome and unsuccessful civil rights actions with this Court. *See* ECF No. 46 (summarizing prior filings and describing their burdensomeness); ECF No. 46-1 (chart summarizing Enow's past cases). As a result of these filings, Enow has accrued three "strikes" under the Prison Litigation Reform Act ("PLRA"), *see Enow v. Feinstein*, PWG-15-3348, ECF No. 10 (assessing third strike on November 20, 2015), meaning that he may not proceed in forma pauperis unless he is in imminent danger. On January 26, 2017, Enow filed this case. After Enow alleged that he was in imminent danger, I allowed the case to proceed without full prepayment of fees. Mar. 20, 2017 Order 5, ECF No. 8-1. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, to which Enow has responded. ECF Nos. 24, 26. The Motion is now ripe for review and will be resolved as a Motion to Dismiss. Also pending is Enow's Motion for a Temporary Restraining Order ("Second TRO Motion"). ECF No. 32. Because Enow previously raised a number of his claims that do not allege imminent harm and they were dismissed pursuant to § 1915(g), I will dismiss those claims. I also will dismiss Enow's § 1983 claims, because he failed to exhaust his administrative remedies for most of them and fails to state a claim against Defendant Muir. He also fails to state a claim under the other federal

statutes he identifies. Accordingly, I will grant Defendants' Motion to Dismiss all of his federal claims and the Court will decline to exercise supplemental jurisdiction over his state claims. And, because none of his claims survive Defendants' Motion to Dismiss, I will deny Enow's Second TRO Motion.

**BACKGROUND**

Shortly after Enow initiated this case, he filed a Motion for Temporary Restraining Order and Permanent Injunction ("First TRO Motion"). ECF No. 6. I issued an Order granting Enow leave to proceed in forma pauperis under the "imminent danger" exception to § 1915(g) and directing Defendants to file a limited response to the Complaint and First TRO Motion. Mar. 20, 2017 Order. In the Order, I summarized the contents of Enow's Complaint. *Id.* at 2-5. I now incorporate by reference that summary.

In April 2017, Enow filed a Motion for Leave to File an Amended Complaint, seeking to add Paul Knight and Officer Lee as Defendants. ECF No. 11. Enow alleged that Knight, a case management specialist, refused to place Enow in protective custody and placed Enow in close proximity to his known enemies. Mot. to Am. 1-2. Specifically, Enow claimed that Knight placed him in a wing of the prison "where he was previously assaulted by a correctional [officer] R. Ryan," and that three days after this placement, Enow's cellmate assaulted him.[1] *Id.* at 2. Enow further claimed that another former cellmate, Kevin Langley, threatened him and kicked him out of the cell; less than two months later, Knight allegedly placed Enow on the same floor of the prison as Langley. *Id.* at 2-3. Enow alleged that Officer Lee "portray[ed] the plaintiff in false light to the prison inmates [in] general population as a snitch with reckless disregard to a known legal duty, by exposing the plaintiff to substantial risk of serious harm." *Id.* at 3. Enow

---

[1] Enow does not explain how the alleged assault by Officer Ryan was connected with Enow's subsequent assault by his cellmate.

did not provide any specific details about Lee's comments, such as when they were made. I granted Enow's motion to amend his complaint to add Knight and Lee as Defendants. Apr. 19, 2017 Order 2, ECF No. 13. In the interest of justice, I accept Enow's allegations against Knight and Lee in his Motion to Amend as supplemental to his Complaint. *See* Fed. R. Civ. P. 1.

In May 2017, I denied Enow's First TRO Motion, noting that Enow's claims were repetitive of claims raised in his prior cases, and concluding that "Enow's broadly stated and uncorroborated allegations provide insufficient information to assess whether he is likely to succeed on the merits or suffer irreparable harm without the preliminary relief requested." May 18, 2017 Order 3, ECF No. 18. Thereafter, Enow filed a Motion for Summary Judgment, which I dismissed without prejudice, as Defendants had not yet responded to Enow's Complaint. ECF Nos. 20, 22.

Defendants then filed the pending Motion to Dismiss. Defendants assert that Enow's claims should be dismissed because he failed to exhaust the administrative remedy process prior to filing suit, as required under the PLRA. Defs.' Mem. 10-12, ECF No. 24-1. Further, Defendants argue that Enow had failed to allege a claim or plead any facts with regard to Defendant Wolfe, that he fails to allege sufficient facts to state a plausible claim against Muir, Knight, or Lee, and that he has not alleged the personal involvement of Wolfe, Muir, or Knight or that they had sufficient knowledge to give rise to supervisory liability under § 1983. *Id.* at 23-26. Enow's Response repeats his summary of the facts, Pl.'s Opp'n 1-9, and recites case law, *id.* at 9-31, but does little to connect that case law to the particular arguments at issue here. His Response therefore fails to rebut the arguments raised by the Defendants.

After Defendants filed a Reply, ECF No. 31, Enow filed the pending Second TRO Motion, alleging that other inmates had assaulted him. Defendants filed a Response to this

Court's order to show cause why Enow's Second TRO Motion should not be granted. ECF No. 36.

Throughout this litigation (as in past cases he has filed), Enow has inundated this Court with lengthy supplemental filings that largely serve one of two functions. *See, e.g.*, ECF No. 46. First, Enow has submitted numerous documents purporting to alert this Court to the latest developments in the administrative grievance process surrounding the claims raised in this action. *See, e.g.*, Corresp. & Atts., ECF Nos. 10, 10-1 (administrative decisions from February and March 2017 dismissing Enow's claim that Officer Christopher failed to protect him from assault by other inmates with urine and feces and Enow was attacked by cellmate Eric Porter); ECF No. 37-1 (letter from Inmate Grievance Office dated September 21, 2017, concerning Enow's claim that officers assaulted him in April 2016). Enow's other frequent supplements provide the Court with a near-contemporaneous account of his ongoing complaints about prison life arising after the filing of the underlying complaint. *See, e.g.*, Supp. Ev., ECF No. 12 (copy of letter titled "Discrimination Complaint For Failure-to-Protect Claims Under Americans with Disabilities Act And § 504 of The Rehabilitation Act of 1973" that Enow sent to Muir on April 9, 2017); Corresp., ECF No. 15 (complaining that mail is being intercepted); Inmate Hr'g Rec., ECF No. 27-2 (concerning disciplinary proceedings arising out of May 19, 2017 incident); Supp., ECF No. 30 (concerning fights with cellmates in summer 2017); Supp. Ev., ECF No. 41 (affidavit from Enow's cellmate concerning Enow's disruptive snoring). But, as discussed further below, his voluminous filings do not remedy the deficiencies in his pleadings. Moreover, they establish that Enow is abusing the imminent danger exception to the PLRA's three-strikes rule, and they call into question whether he should be permitted to avoid paying the full filing fee in the future. *See, e.g.*, ECF No. 46.

**DISCUSSION**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004) . . . ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or

conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## A. Repeated Claims

Several of Enow's claims bear no relation to the imminent harm at issue. Moreover, these claims have formed the basis of past actions that were dismissed without prejudice for failure to pay the filing fee. It would vitiate the purpose of the PLRA if claims previously dismissed for failing to pay the filing fee or demonstrating imminent danger were able to be saved merely by tacking them onto a new suit that again claims imminent danger. Accordingly, I will disregard the claims arising out of Hadesty and Ryan's actions on February 6, 2016, Compl. 5, ECF No. 1, since Enow discussed this incident in *Enow v. Green*, PWG-16-3554 (Compl. 5-6, ECF No. 1 in PWG-16-3554) and *Enow v. Green*, PWG-16-3917, (Compl. 10, ECF No. 1 in PWG-16-3917), both of which were dismissed pursuant to § 1915(g) because Enow failed to pay the filing fee or allege imminent danger. Likewise, the Court will not consider the claims against West, Clayton, Blake, and Flockerzi concerning their altercation with Enow on April 18, 2016, Compl. 5-7, because Enow also raised claims regarding the April 18 incident in *Enow v. Green*, PWG-16-3554 (Compl. 9-17 in PWG-16-3554), and *Enow v. Green*, PWG-16-3917 (Compl. 11-12 in PWG-16-3917).

## B. Remaining § 1983 claims

Turning to the § 1983 claims presented for the first time in this action, Enow asserts that Defendants Christopher, Hall, and Warren intercepted his mail and encouraged other inmates to attack him with urine and feces or failed to protect him from such attacks. Compl. 7, 10. He also claims that these Defendants and Defendant Lee informed other inmates that he was a snitch. *Id.* at 7-8; Mot. to Am. 3. Enow asserts that Defendant Muir failed to respond to his

grievances, Compl. 10, and that Defendants Elliott and Knight placed him in dangerous housing, *id.* at 12; Mot. to Am. 1-3.

### a. Failure to Respond

Enow claims that on December 11, 2016, he "wrote a request slip to case management manager, Mr. Mike Muir to have the plaintiff transferred to Jessup Correctional Institution (JCI) but the plaintiff never received any responsed [sic] from Mr. Mike Muir." Compl. 10. This does not amount to a cognizable § 1983 claim. "Section 1983 provides a remedy against any person who, acting under color of law, deprives another of constitutional rights." *Bixler v. Harris*, No. WDQ-12-1650, 2013 WL 2422892, at *5 (D. Md. June 3, 2013) (citing 42 U.S.C. § 1983). An official's failure to respond to an administrative grievance is not a constitutional violation, as "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (discussing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)); *see Robinson v. Wexford*, No. ELH-17-1467, 2017 WL 4838785, at *3 (D. Md. Oct. 26, 2017) ("[E]ven assuming, *arguendo*, that defendants . . . did not satisfactorily investigate or respond to plaintiff's administrative grievances, no underlying constitutional claim has been stated."). And, in any event, as detailed *infra*, Maryland prison policy requires that grievances over case management issues such as prisoner placement be made directly to the Inmate Grievance Office. OPS.185.0002.05F(1). Thus, there is no reason to believe that Enow's "request slip" to Muir warranted a response. Given that Enow has not pleaded that he filed a grievance with the IGO regarding Muir's failure to respond, and that he did so before filing this suit, he also has not alleged that he exhausted his administrative remedies for this claim. Accordingly, Enow's claim against Muir must be rejected.

**b. Unexhausted Claims**

As for the § 1983 claims against Defendants Christopher, Hall, Warren, Elliott and Knight, Defendants argue that Enow has not exhausted his administrative remedies. Defs.' Mem. 10-12. The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he phrase 'prison conditions' encompasses 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily "may not excuse a failure to exhaust." *Id.* at 1856 (*citing Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")). Moreover, "[e]xhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. Exhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 613, 624-25 (D. Md. 2015) ( (internal citation omitted).

For most grievances filed by Maryland state prisoners, filing a request for administrative remedy ("ARP") with the prison's managing official is the first of three steps in exhausting administrative remedies as required under § 1997e(a). *See* Code of Md. Regs. ("COMAR"), tit.

12 § 07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 § 07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 § 07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Servs. §§ 10-206, 10-210; COMAR, tit. 12 §§ 07.01.03 and 07.01.05B. The IGO then reviews the complaint and either dismisses it without a hearing, if it is "wholly lacking in merit on its face," or refers it to an administrative law judge for a hearing. Corr. Servs. §§ 10-207, 10-208; Cts. & Jud. Proc. § 10-208(c); COMAR, tit. 12 § 07.01.06A, .07, .07B, .08. The administrative law judge, in turn, may deny all relief or conclude that the inmate's complaint is wholly or partly meritorious, after which the Secretary of DPSCS must make a final agency determination. *See* Corr. Servs. § 10-209(b)-(c).

Although the above-described procedure applies when seeking to exhaust most types of administrative remedies, a different administrative procedure applies when grieving about certain subjects. One such example is case management decisions, which are grieved directly to the IGO. OPS.185.0002.05F(1). "[R]equesting to be placed on Protective Custody or a transfer to another facility is a case management action." ARP Filings 2, ECF No. 10-1.

Enow disputes Defendants' exhaustion argument, claiming that he "has exhausted his ARP through the appellate process with the IGO." Pl.'s Mem. 12, ECF No. 26-3. However, Enow supports his assertion by relying on administrative appeals that were filed and/or ultimately resolved *after* this action was initiated on January 26, 2017. *See id.* (citing ARP Case No. ECI 0994-17, IGO No. 20170640, and IGO No. 20170351); Grievance 4-7, ECF No. 20-5

(initial grievance in ARP Case No. ECI 0994-17 filed April 14, 2017); Shumaker Decl. & Atts. 68-69, ECF No. 24-2 (May 23, 2017 IGO letter stating that IGO No. 20170351 would be dismissed for failure to exhaust the ARP process within 30 days if Enow failed to provide certain documentation); *id.* at 70 (July 12, 2017 IGO letter dismissing IGO 20170640, which was received April 24, 2017).

Additional review of the record confirms Plaintiff's failure to exhaust numerous claims. For example, Enow claims that Christopher, Hall, and Warren intercepted his mail and told other inmates that he was a snitch; that Warren encouraged other inmates to fight with Enow and denied Enow a shower on December 8, 2016 after overhearing Enow make offensive remarks about African Americans; and that Christopher and Hall refused to intervene when other inmates threw urine and feces on him. Compl. 7-10. Enow filed the initial administrative grievance raising these claims on December 27, 2016. ARP Filings 7-9. On January 22, 2017, roughly the same time Enow mailed the Complaint in this case, Enow appealed the denial of this grievance. *Id.* at 3. On March 24, 2017, the Commissioner of Correction denied the appeal. *Id.* at 1-2. Even at that point, two months after filing this action, Enow still had not exhausted his administrative remedies, as he had yet to file a complaint with the IGO.

Enow's claim that Lee told other inmates that he was a snitch, *see* Mot. to Am. 3, was similarly unexhausted at the time he filed this action. The content of a letter to Enow from the IGO indicates that, on March 7, 2017, after he filed this litigation, he sought IGO's review of his claim that Lee (as well as Christopher, Warren, and Hall) informed other inmates that he was a snitch. Shumaker Decl. & Atts. 68-69. This letter demonstrates that Enow could not have fully exhausted the administrative grievance procedure as to his claim against Lee prior to filing this action on January 26, 2017.

As to Elliott and Knight, Enow claims that these Defendants placed him in dangerous housing and ignored his requests for protective custody. Compl. 12; Mot. to Am. 1-3. Because housing placement is a case management decision, Enow was required to file a grievance directly with the IGO as part of the exhaustion process. OPS.185.0002.05F(1). There is nothing in the record indicating that he did so before filing this action.

Enow alternatively argues he is excused from the exhaustion requirement because "his initial complaint was filed under the imminent danger of serious physical injury exception under 28 U.S.C. § 1915(g)." Pl.'s Mem. 11-12. However, Enow's argument is misplaced: the imminent danger exception under § 1915(g) allows a three-strike litigant to proceed in forma pauperis; it does not excuse the exhaustion requirement. *See McAlphin v. Toney*, 375 F.3d 753 (8th Cir. 2004) (refusing to recognize "imminent danger" exception to PLRA's exhaustion requirement and holding inmate who was allowed to proceed in forma pauperis under imminent danger exception to "three strikes" restriction was still required to meet exhaustion requirement of PLRA). Indeed, Enow subsequently acknowledges as much. Pl.'s Mem. 12. Accordingly, these claims must be dismissed for failure to exhaust administrative remedies. *See Ross*, 136 S. Ct. at 1856-57; *Jones*, 549 U.S. at 220.

**C. Other federal statutory claims**

In his Motion to Amend, Enow listed claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*; the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*; and the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII Act"), 42 U.S.C. §§ 10801 *et seq*. Mot. to Am. 1. In granting Enow leave to amend to name additional defendants, I noted that it was "unclear from the motion whether Enow also [sought] to assert additional causes of action." Apr. 19, 2017 Order 1. Because the case was in its preliminary stages, with Defendants

not yet having accepted service, I permitted Enow to name the additional defendants and directed him to file "an Amended Complaint that set[] forth all claims against all parties by May 10, 2017." *Id.* at 1-2.

Enow has not filed either an Amended Complaint or a Supplement to his Complaint, and his cursory reference to new causes of action is not sufficient to state a claim. *See Moore v. Jordan*, No. TDC-16-1741, 2017 WL 3671167, at *4 (D. Md. Aug. 23, 2017) ("Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678."). Neither his complaint nor his Motion to Amend addresses any of the elements of an ADA or Rehabilitation Act claim. *See Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (stating elements of ADA and Rehabilitation Act claims). And, the PAMII Act, which concerns the powers and responsibilities of "system[s] established in a State to protect and advocate the rights of persons with developmental disabilities under subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act," 42 U.S.C. § 10802(2); *see also id.* §§ 10803, 10805, does not create a private right of action. *See Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 994-95 (1st Cir. 1992) (concluding that "plaintiff ha[d] no enforceable rights under § 10841" because the language used in the Act "indicate[s] that the statute is merely precatory"); *Manley v. Horsham Clinic*, No. 00-4904, 2001 WL 894230, at *7 (E.D. Pa. Aug. 9, 2001) ("It is well settled that [the PAMII Act] does not create a private right of action; the precatory language of this statute merely expresses a Congressional preference for certain kinds of treatment."). Accordingly, to the extent these claims were alleged, they are dismissed.

**D. State law claims**

Enow's remaining claims of intentional infliction of emotional distress and defamation sound in state law. Compl. 2. Because I am dismissing all of Enow's federal claims, this Court declines to exercise supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (noting that, pursuant to § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished"). These claims are dismissed, without prejudice to plaintiff's right to pursue such claims in state court.

**E. Temporary restraining order**

As the Court has rejected all of the claims in the underlying action, Enow is plainly not entitled to a temporary restraining order or preliminary injunction. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (noting that, in order to obtain preliminary injunction, movant must demonstrate, among other requirements, that he is likely to succeed on the merits). Accordingly, Enow's Second TRO Motion, ECF No. 32, is denied.

**F. Additional Note**

Enow's filings belie his claims that, on the whole, prison officials have been deliberately indifferent to his being attacked at the hands of other inmates. For example, Enow noted that he was attacked by different cellmates over a short period of time, which he believes is evidence of deliberate indifference. Pl.'s Mem. in Supp. of Second TRO Mot. 1-2, ECF No. 32-1. However, these incidents actually indicate that prison officials took action when Enow was attacked by a cellmate—namely, assigning him a new cellmate. Taking some action—even if that action is not the best option or is ultimately unsuccessful—is generally contrary to the notion of deliberate indifference.

Nonetheless, the Court cautions Defendants that the current tact has apparently not proved effective. Continuing along this course of action in the face of such results may be deemed deliberate indifference going forward. I am cognizant that managerial concerns such as internal security issues are not within its ambit, and that prison officials are ordinarily entitled to deference in prison management decisions. *See Wilkinson v. Austin*, 545 U.S. 209, 228 (2005). It is for this reason that the Court does not seek to suggest what an appropriate course of action might be.

Further, I am mindful of the fact that Enow has proved to be difficult inmate to safely house, as his own filings reveal. For example, Enow does not appear to appreciate that his comments engender animosity toward him. It is hardly surprising that other inmates were agitated by Enow's comments to them that "it's a shame, you African Americans have made the black race look bad," and that African Americans' "evil deeds . . . make[] black people look bad in the face of the world." Compl. Att. 10, ECF No. 1-1 (Enow's administrative grievance filing acknowledging that he made such statements). Enow also noted that he "was being threatened with hate crime by African-American inmates because of jealousy based on the fact that the complainant is highly educated coming from West Africa and think he is better than them," Supp. Ev. 10, ECF No. 12, suggesting that Enow may provoke conflict whenever he is housed with an African-American inmate or an inmate who does not have an advanced degree.[2]

---

[2] As an officer at MCI-Hagerstown explained:

> Mr. Enow was difficult to place with other inmates and to keep him safe. He considered himself better educated than other inmates, and he would say things to other inmates that would irritate them and instigate altercations. Most, if not all, of Mr. Enow's problems were self-inflicted.

> Mr. Enow frequently felt threatened and would go to officers to inform them of feeling threatened. Generally the threat was perceived but not actual. In some instances, Mr. Enow would publically point out the inmates that he considered a

Indeed, Enow's offensive remarks to other inmates lend credence to Defendants' contention that "[t]he Plaintiff creates his own danger in that he constantly antagonizes and instigates an altercation in an effort to remain on disciplinary segregation and away from the general population of the institution." Defs.' Resp. to Show Cause Order 5; *see also* June 12, 2017 Mem. Op. 7, ECF No. 32 in *Enow v. Dovey*, PWG-16-615. However, Enow's ignorance of or disregard for the likely consequences of his offensive comments does not absolve Defendants of their duties with regard to inmate safety.

## **CONCLUSION**

Accordingly, the Court grants Defendants' Motion to Dismiss.[3] Enow's claims are dismissed without prejudice. Enow's Second TRO Motion is denied.

A separate Order follows.

| | |
|---|---|
| February 1, 2018 | /S/ |
| Date | Paul W. Grimm |
| | United States District Judge |

---

threat. On one occasion, Mr. Enow felt threatened in the chow hall, went to correctional officers and began pointing out three inmates. . . .

Mr. Enow's habit of publicly pointing out supposed threats, particularly including the chow hall incident, result in the feeling that he was a "snitch." Correctional officers did not label Mr. Enow a "snitch." However, his own actions led some inmates to consider him a snitch.

June 12, 2017 Mem. Op. 7, ECF No. 32 in *Enow v. Dovey*, PWG-16-615.

[3] Because all claims are subject to dismissal for the reasons discussed, I need not reach the alternative grounds Defendants raised in their Motion to Dismiss.